IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COURTNEY NICOLE LIENEMANN,<br><br>Defendant. | CR 20-94-BLG-SPW-1<br><br>ORDER |

Before the Court is Defendant Courtney Nicole Lienemann's Motion to Withdraw her Guilty Plea to Count II of the Indictment, filed on September 30, 2021. (Doc. 86). The United States responded in opposition on October 14, 2021. (Doc. 92). Lienemann filed her reply on October 25, 2021. (Doc. 95). The Court finds it unnecessary to hold a hearing on the matter and deems the motion ripe for adjudication. For the following reasons, the Court grants Lienemann's motion.

I. **RELEVANT BACKGROUND**

Lienemann was charged in a two-count Indictment with Possession with Intent do Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count I); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count II). Lienemann was arrested and appeared before Magistrate Judge Cavan on September 3, 2020.

1

Lienemann and the United States reached a plea agreement on February 11, 2021, in which Lienemann was to plead guilty to both counts and the Government was to recommend a three-level reduction for acceptance of responsibility. The Government also intended to file a "5K" motion on behalf of Lienemann to further reduce the guideline sentencing range. Judge Cavan held a change of plea hearing on February 22, 2021. Thomas Godfrey appeared on behalf of the United States and Cammi Woodward appeared on behalf of Lienemann. Lienemann appeared via teleconference from the Yellowstone County Detention Facility.

During the hearing, Judge Cavan asked Lienemann to explain in her own words why she was guilty to the offense in Count II. The following dialogue occurred:

> Judge Cavan: All right. Now, Count II charges you with possession of a firearm in furtherance of a drug trafficking crime. Would you please tell me what you did that makes you feel that you're guilty of that offense?
>
> Lienemann: I had a 9 millimeter pistol in a holster on my side.
>
> Judge Cavan: All right. And why did you have the pistol?
>
> Lienemann: Honestly, because I was in an abusive relationship and I was scared of the guy, and I --- so I bought it and --- to make myself feel better about being alone in public ---
>
> Judge Cavan: Okay.
>
> Lienemann: --- or anywhere in public.
>
> Judge Cavan: All right.

Lienemann: Because he's been stalking me, so . . .

Judge Cavan: Well, did it have anything to do with your --- with the distribution of methamphetamine?

Lienemann: Not really, no. I just --- but I was selling meth when I had it, so . . .

Judge Cavan: Well, did you have it for any reason in connection with your offense? For example, did you have the pistol for your protection in connection with the transaction?

Lienemann: No.

Judge Cavan: Mr. Godfrey, does the offense require more than mere possession? Doesn't it require some relationship to the offense?

Godfrey: It does, Your Honor. She would have to admit that she had it for protection or something in the course of the offense or there's no factual basis.

Judge Cavan: All right. Ms. Woodward.

Woodward: I don't know what to tell you, Your Honor. I do know that she did carry it for protection always.

Judge Cavan: Well, if she --- if she didn't carry it for protection in connection with the crime and she just possessed it for other reasons ---

Woodward: Right.

Judge Cavan: --- then that wouldn't be sufficient.

Woodward: Correct. I'm with you.

Judge Cavan: All right. We can --- I think what we'll do is --- let's take a five-minute recess ---

3

Woodward: Okay.

Judge Cavan: --- and you can maybe explain to Ms. Lienemann what the requirements of the offense is. If she doesn't possess it with --- in relation to this offense, then I won't be able to accept her plea.

Woodward: I understand, Your Honor.

…

Judge Cavan: Please be seated. Ms. Woodward, is your client prepared to proceed?

Woodward: I think --- I'm pretty sure she is, Your Honor.

Judge Cavan: All right. Ms. Lienemann, we were --- what I had asked you to do is to explain to me in your own words what you did that makes you feel that you're guilty of these offenses. We've covered the charge in Count I relating to possession with intent to distribute, and I'm now asking you about the --- any facts to support your plea to Count II of the indictment. And, again, I'll ask you to tell me what you did that makes you feel that you're guilty of that offense. And you told me that you were in possession of a firearm, a 9 millimeter firearm. And I want you to tell me now if that had any relationship at all to the offense of possession with intent to distribute methamphetamine.

Lienemann: Yeah, I was carrying it when I --- all the time. I always had it, so . . .

Judge Cavan: All right. But you didn't have it for any particular purpose in connection with this offense?

Lienemann: Yeah. It ---

Judge Cavan: I'm sorry?

Lienemann: Yes, I did.

Judge Cavan: I know that you possessed it at the time of the offense.

Lienemann: Yeah.

> Judge Cavan: But what connection did it have to the offense? Did you ---
>
> Lienemann: Just in case something happened.
>
> Judge Cavan: All right. Well, so --- just to be clear, you said that you carried the firearm all the time, but you --- did you carry it specifically at this time for --- you said in case something happened. Are you telling me that --- did you carry it this time for your protection in connection with the offense?
>
> Lienemann: Yes.
>
> Judge Cavan: All right. So --- all right. So the --- when you were going to engage in this transaction of methamphetamine, you possessed the firearm to provide protection in connection with that transaction.
>
> Lienemann: Yes.
> ...

(Doc. 92-1 at 29-33).

During the recess, Lienemann was upset and states that she was advised that for the court to accept her plea, she would have to say that she possessed the firearm in connection with selling methamphetamine. (Doc. 87-2 at ¶ 8). She states that she was not advised she did not have to change her plea that day nor admit to the offense if she did not commit that offense. (*Id.*).

Lienemann also states that, at the time of the change of plea, she was advised that if she pled guilty to the charges, she could be ordered to participate in a Yellowstone County Drug Treatment Court rather than face a mandatory minimum of five years imprisonment. (*Id.* at ¶ 5). Seemingly based on this belief,

5

Lienemann applied for and was accepted into a local drug court. (*Id.*). The sentencing memorandum filed on behalf of Lienemann explains that she was screened for and accepted into a drug treatment court but was then denied entry for reasons her attorney was not aware of. (Doc. 71 at 4). The sentencing memorandum also expresses Lienemann's counsel's anticipation that the Government would file a motion under 18 U.S.C. § 3553(e) to avoid the application of a mandatory sentence. (*Id.* at 5). This did not occur. (*Id.*). Lienemann states that she was unaware that she faced a mandatory minimum sentence of five years until one week before her sentencing. (Doc. 87-2 at ¶ 13). Lienemann then requested a change of counsel which the Court granted. (See Docs. 73, 77).

The Court appointed new counsel for Lienemann on July 28, 2021. (Doc. 78). Lienemann filed the present motion on September 30, 2021.

## II.   LEGAL STANDARD

"A defendant may withdraw a plea of guilty or nolo contrendre . . . [a]fter the court accepts the plea, but before it imposes sentence if . . . [t]he defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant bears the burden of demonstrating a fair and just reason. *United States v. Read*, 778 F.2d 1437, 1440 (9th Cir. 1985). "While the defendant is not permitted to withdraw [their] guilty plea 'simply on a lark,' the

'fair and just' standard is generous and must be applied liberally." *U.S. v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (quoting *United States v. Hyde*, 520 U.S. 670, 676-77 (1997)).

### III. DISCUSSION

Lienemann asserts that the Court should allow her to withdraw her guilty plea to Count II because she maintains she is innocent of the charged crime and because her previous counsel grossly mischaracterized the potential sentence she faced.

Fair and just reasons for withdrawing a guilty plea typically include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered [their] plea." *McTiernan*, 546 F.3d at 1167 (emphasis omitted). Similarly, whether the defendant asserts their legal innocence is an important factor to consider. *U.S. v. Ortega-Ascanio*, 376 F.3d 879, 883-84 (9th Cir. 2004) (citing Fed. R. Crim. P. 32(d) Advisory Committee Notes (1983 Amendments)). Legal advice received before entering into a plea agreement may also constitute a fair and just reason to withdraw a guilty plea if the defendant demonstrates "that [their] counsel's gross mischaracterization [of a possible sentence] plausibly *could* have motived [their] decision to plead guilty." *Id.*

7

(quoting *United States v. Davis*, 428 F.3d 802, 808 (9th Cir. 2005)) (emphasis in original).

First, in support of her legal innocence, Lienemann points to her discussion at the change of plea hearing in front of Judge Cavan. When initially asked why she had the firearm, Lienemann responded that she carried it with her because she had previously been in an abusive relationship and having the weapon made her feel better about being alone in public. (Doc. 92-1 at 29). Judge Cavan asks her multiple times whether she carried the firearm in connection with the charged drug trafficking crime to which Lienemann ultimately responds, "No." (*Id.* at 30). After the recess, during which Lienemann's counsel explains to her that the court cannot accept her guilty plea to Count II unless the firearm was used in connection to selling drugs, Judge Cavan asks Lienemann again about the weapon. After several more questions attempting to clarify Lienemann's non-committal responses, Judge Cavan asks, "So the --- when you were going to engage in this transaction of methamphetamine, you possessed the firearm to provide protection in connection with that transaction." (*Id.* at 33). Lienemann responds, "Yes." (*Id.*).

It is apparent from this record that Lienemann displayed reservations about admitting she carried the firearm in connection with drug trafficking. It is not until after a recess and further prompting from Judge Cavan that Lienemann agrees she possessed the weapon in furtherance of the methamphetamine transaction. Even

then, Lienemann admitted no more than that she carried the firearm "in case something happened" and responded "yes" to Judge Cavan's clarification that she possessed the gun in connection with the transaction. (Doc. 92-1 at 32-33). The record convinces the Court that Lienemann did not believe she possessed the firearm in connection with the methamphetamine transaction. Therefore, the Court finds Lienemann's assertion of her innocence on Count II to be sincere and supported by the record.

Second, the Court finds that the available evidence regarding what Lienemann understood her potential sentence to be further supports allowing Lienemann to withdraw her guilty plea. In her affidavit, Lienemann states that prior to this indictment, she had no criminal convictions. (Doc. 87-2 at ¶ 3). She further states that her attorney at the time advised her to apply for drug treatment court as her attorney believed she could be sentenced to treatment court instead of federal imprisonment as part of the plea deal. (*Id.* at ¶ 5). Pursuant to this advice, Lienemann applied for and was accepted into Judge Harris' STAR Court. (Doc. 71 at 4).

At the change of plea hearing, Lienemann asserts she believed she had to say she carried the firearm in connection with the drug transaction for Judge Cavan to accept the plea agreement. (Doc. 87-2 at ¶ 10). When she received the presentence investigation report, Lienemann learned she was rejected from drug court. (*Id.* at ¶

9

12). A week before sentencing, Lienemann's attorney informed her that she faced a mandatory minimum of five years imprisonment. (*Id.* at ¶ 13). Lienemann subsequently requested a change in counsel that the Court eventually granted. (Docs. 73, 77, 78).

While the Court does not believe Lienemann's previous counsel intentionally grossly mischaracterized Lienemann's potential sentence, the record supports Lienemann's assertions that she understood drug court was a possible alternative to imprisonment and that she was not aware that the mandatory minimum sentence remained until after she received the presentence investigation report and just prior to sentencing. Based on this misunderstanding, the Court finds that Lienemann's beliefs at the time of her change of plea hearing likely influenced her decision to admit guilt to Count II. This is an additional fair and just reason to allow Lienemann to withdraw her guilty plea.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Defendant Courtney Nicole Lienemann's Motion to Withdraw her Guilty Plea to Count II is **GRANTED.**

The Clerk of Court is directed to notify counsel of the making of this Order.

DATED this 4th day of November, 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge